I didn't say this explicitly in the brief, but I'll say it now. It's the plaintiff's contention, it's my contention, that the safe harbor provision of Rule 11 is jurisdictional. And I think that the Barber case from this Court clearly supports that proposition. Second, we didn't continue to advocate the misstatement, the serious factual misstatement, in Avermant 17 of the First Amended Complaint, that was also in the amended complaint, at all, after it was put in there. I personally didn't do it. What happened, as I think is explained in the brief, is that several years after it was put in there initially, and a year or two after it was repeated in the First Amended Complaint, when the motion for summary judgment came in, I delegated that to the attorney of the firm who was handling that, and believed that it had been corrected in the opposition to the motion for summary judgment. It's the law in this circuit that on summary judgment, the opposition to the summary judgment and what's in the record on summary judgment is what becomes the record and what's before the Court. Counsel, you and the counsel who was assigned to the matter did not discuss it? No, we didn't. It wasn't a matter of assignment. That was the person who was handling it. I saw the Rule 11 motion come in, and the reason I saw it is because everything that comes into our firm goes by me first before any other attorney touches it. That's just the procedure we have. I was concerned by the Rule 11 motion, and I said, please deal with this. I was told it wasn't a problem and that it would be addressed in the response to summary judgment, in which the theory of the case was changed. I believe that the changing of the theory of the case was permissible, was appropriate based on Devereaux v. Abney, the en banc decision from this Court. And that went by me also. I didn't participate in it, but it seemed appropriate and adequate to me. There's no question but that the firm did what occurred. I didn't personally continue to advocate anything at all. I made a serious mistake when I interviewed our client, Paul Blumberg, in the county jail, and he indicated to me that he had been arrested by Officer Hewitt in 1995 and that there was another arrest in 1997. Mr. Blumberg clearly didn't tell me, because he had always been accurate with me and he's a very bright guy, that he was arrested by Hewitt in 1997. So clearly it was a glaring factual error. The other side didn't find that for years. I didn't know about it, and when I found out about it, I did what I thought was appropriate and asked that it be corrected. Well, Mr. Yagman, my understanding as I read the record here is that the district court found some deficiency in your explanation, I think, that you did not review the materials that were submitted to the state court. That's absolutely correct. That's a pretty damning thing. I mean, you have an obligation, you don't have an ethical obligation to review things that are filed in state court? It had nothing at all to do with this proceeding, and I don't think it's serious under the circumstances at all. I had met Mr. Blumberg. I knew him fairly well from having interviewed him a number of times. We did him a favor. Well, I'm not taking you on here. I'm just saying, I'm trying to go through what the district court found, because in the state court filing, it clearly stated that it was the sheriffs who arrested him and not the LAPD. Absolutely, I don't quibble or quarrel with that at all. With the district court, Judge Feese, who, by the way, is a terrific judge, and I have never had a quarrel with Judge Feese at all. Judge Feese said that he didn't believe that I didn't read, as I stated I didn't, the habeas petition before I filed it. Well, he's giving you a compliment, because one would never assume that a competent lawyer would file such a habeas petition without reading it. I read it through for grammar and other things. I didn't read the cases. I didn't check it. I did Mr. Blumberg a favor and submitted it for him because he was in jail. We didn't want it to go in as a pro perpetition because there wouldn't be any hearing on it. And I read it and I went down and argued for him. I didn't read it for the facts or the accuracy. I know that there are people who would be shocked that an attorney would do that, but it wasn't really my habeas petition. It was his. I did it as a favor. I don't do habeas law. I'm not familiar with it. And I read it very, very quickly. He submitted it in longhand on about 160 pages of yellow notepaper like this. I had my secretary type it up, and then I read it really, really quickly. I wasn't reading it for the facts. I assumed Mr. Blumberg knew what he was talking about. And I just didn't catch it. But I think it's immaterial because Averman 17 was inaccurate. And when it was brought to our attention, we took appropriate action and withdrew it and changed the theory of the case because the case, as it initially was pled, simply couldn't go forward based on what was set forth in Averman 17. I don't know what else to say about that. We review for findings of fact, as you know, for substantial evidence. Findings of fact for substantial evidence in the position of sanctions for abuse of discretion. And just parenthetically, I mean, the sanctions here are not a huge amount given it was a sort of measured amount. I realize it's not trivial. We look at this record. Your signature appears on the habeas petition. And we have a finding from the district court that you knew. Now, you tell us you didn't. And you say it's a good district judge. I know it's a good district judge. And that's a finding that he, you know, your signature appears on it. And he finds that it was an oversight, that you knew. We may disagree with him, but that's not our province. Our province is to determine whether there's substantial evidence. And I, for one, have a hard time on a record like this with a lawyer's signature appears on there, and we have a district judge finally saying, look, he did read it, he didn't know. I make a finding of knowingness and willfulness to say, no, it's not true. I mean, I don't know. It's a significant declaration. Any of us might have reached, made a different finding, confided with the same facts, but that's not what we do here. I've been around for a long time. I don't have any good answer to that. I didn't read it. It's a damning declaration against interest in Judge Ezra's view. I just didn't do it. And if that means that that should be a basis for me getting sanctioned, then so be it. I mean, that's part of the game. I've done this for a long time. I wasn't trying to take my view. You said you didn't do it, that you didn't read the declaration. That's correct. Yeah, I mean, it wasn't my view that you didn't read it. You said you didn't read it. It's a little awkward because you're the lawyer on the declarant, right? Yeah. We have to sort of see this, you know, so you're standing here. I don't, you know, we can't really make findings of fact based on what you are saying to us here. This is a closed record. There is a witness. Happens to be Stephen Yackman, who also is standing in front of us. But it's no different from any other witness in any other trial. And God knows we leave people in prison. We send people to be executed on just things like that, where a witness says something. And I'm having a difficult time, just as an appellate judge, getting around or, you know, finding any reason to get around a factual finding. I don't think you need to get to it because I think the safe harbor provision wasn't complied with. I'm offering that by way of explanation. If the safe harbor provision, I mean, I understand that argument. Why does it make any difference since the judge also imposed sanctions on the 1927? Well, I've only got a minute left. I wanted to get to that. The rest of, you know, what has been said here is self-evident so far, which is self-evident, because there's nothing to support that it was done vexatiously, it was done unreasonably and for the purposes of vexing anybody. This would be crazy to do this to vex somebody, because the other side would know what the true facts were. This wasn't done to vex anybody. It was a screw-up. It was a serious, serious screw-up. I've never done anything like this before, as far as I know. It wasn't done to vex anybody. You've got to have a subjective component here of doing it to vex the other side. We had scores of rampant cases against the city attorney's office that were all like this, that were fought really hard. There's no point in trying to vex anybody by putting an improper fact in there. It just doesn't make any sense. It blocks common sense. I've got no time left. Two seconds. You got it. You got it. Good morning, Your Honors. If I could just address the safe harbor issue. I don't think there's any case law on whether you get the extra three days from the other side. There's no doubt that you do. It falls clearly within the rule. And you screwed up. You filed it. You were too quick. Well, I think there's a little. You know. It seemed to me like you were kind of chomping at the bit there. I mean, you literally filed it. I mean, you figure you had Mr. Yagman on the ropes. And the 21st, what was it, 21 days? 22. 22 days. The 22nd day. Bam. The problem is that you mailed it. You should have served it. And if you'd have served it on Mr. Yagman, you'd have been okay. But you didn't. You mailed it. And I've looked through the law. And it looks to me pretty clear that you get those. He gets those three days. And you didn't give him the three days. I reread the rule yesterday. And there's something in there that I think is interesting that I'd like to sort of address at this point. On Rule 11, it talks about the 21 days, parentheses, or such other period as the court may prescribe. End parentheses. But where did the judge prescribe a different time? Well, I think. After the fact? Oh, I think the judge did. Well, I don't know. How can the judge do that after the fact? It seems to me like a little bit of an ex post facto here. Well, I think the judge made a finding that it made absolutely no difference whether you had the extra couple of days in there or not. That's different than expressly providing for a different time period. I'm sorry? That's different than giving a different time period for the safe harbor. The Court did not in this case say the 21 days does not apply. Here's the date that applies. What the Court said was I think probably you do get the extra three days for mailing. But it's very clear to me that whether he had the extra three days or not, nothing would have been different. And I think that references back to the judge's finding that that he's prescribing that the period that was given was adequate notice under the circumstances. Okay. Now. I think that comes under the rubric of nice try. Yeah. What you're basically arguing to us is that there is an equitable, some sort of equitable exception and that the district court has discretion. Well, I think that's what the language in Rule 11 refers to. Well, I think the language in Rule 11 says that if the Court ahead of time prescribes a period, as my colleague Judge Rawlinson suggests, that's not what happened here. After the fact, when it was clear to the Court that you had missed the deadline by several days, three days to be exact, the judge said, well, you know, I guess it doesn't really make any difference because he wouldn't have done anything different. And at that point, what the Court is doing is it is exercising discretion to ignore the three days, not prescribe a new period after the fact. There's no law interpreting language. All right. Well, I mean, I certainly understand your argument. You know, I don't want to impose myself on my colleagues, but what about your other argument? Is there another argument here? Sure. There's plenty more arguments. There's the argument that this was absolutely valid under 1927, the sanctions. There's the argument that the court also has discretion. What supports the vexatiousness? I mean, what do you know about the standards of 1927? What supports that? I'm sorry? What supports the findings? The recklessness, the vexatiousness? Yes. This case has been in the system now five years. It goes back. The incident makes it eight years. What is the standard of recklessness? I'm just saying, let me, if I could run through the history a little bit to show why it's But it's useful to focus on the standard that you were asking yesterday. Right. Sure. What is the standard? The standard. You said recklessness. Is recklessness part of it? I'm sorry? I didn't. You said recklessness. Right. There's the case that talks about recklessness being the standard. What does the statute say? The statute says, I think, vexatious. Unreasonably and vexatiously. So those are conjunctions. It has to be both unreasonable and vexatious. And I think it meets all of those standards. Did the district court find unreasonableness and vexatiousness? I think he did, yeah. I think he found he had no problem under. It means you're not sure. What language in the court's ruling supports your conclusion that the court found unreasonable and vexatious multiplication of the proceedings? I can have one moment. I forgot my reading glasses. I'm really struggling up here. It's a bad thing to forget. It is a bad thing to forget. Mine are distance glasses. I'd lend you mine. You can try my trifocals. You might be okay in one of the three planes. But I absolutely refuse to give in. I've got three different levels here. I'm trying to find the part in the opinion where he talks about. Well, it starts on page eight. The bottom of page eight of the opinion. That helps you. At the very bottom, it says, in addition, defendant points out. Right. Okay. He's identifying that we've raised the 1927. Yeah. I'm trying to get to the part where he actually. Oh, here. I think it's on page 13. Okay. It goes on to page 14. Where's the language that makes the finding vis-a-vis this particular filing? Okay. Under the circumstances, Mr. Yagman and Ms. Bloomfield could not have denied the veracity. Where is it? Oh, I'm sorry. Page 14, line eight. Could not have denied the veracity of the city's evidence and continue to insist that the LAPD falsified probable cause for Blumberg's arrest in good faith. Thus, the outcome here does not depend upon such a ruling. 1927 provides further justification. No express finding. Well, I think that is an express finding, particularly in light of the factual history of the case. This is a case where Mr. Yagman, back in 2000, sued literally dozens of city officials, city attorneys, city council people, police commissioners, police chiefs. Dozens and dozens of people are served, are sued in this case. This was part of the Rampart litigation, and Judge Feese, who is an excellent judge, did sort of compartmentalize how the litigation was going to be handled, and he permitted certain motions to be filed at certain times on the Rampart litigation. There were many motions filed in this case, getting out most of the individual city officials. There was a Heck motion filed, and we were allowed to file a Heck motion. There were RICO motions filed. There was substantial litigation that went on in this case that did not need to go on, is the point. That had Mr. Yagman acknowledged his error early on, none of this would have happened. Well, you know what I don't understand, what is really surprising to me? Here we have Mr. Yagman, who has sued the absolute wrong party. Right. And this litigation goes on for years, and the city attorney's office never figures out that he sued the wrong party? I mean, I'll be honest with you. If we're talking about negligence here, and I represented a defendant, and I never bothered to ask him, by the way, did you arrest these people? I mean, how in the world did the case get litigated for five years, and nobody filed a motion to dismiss because they sued the wrong people? Let me just say one thing, first of all. The two officers that we're talking about, Hewitt and Martin, are represented by conflict counsel. The city had to conflict out, so we were not representing those two officers. Well, it doesn't make any difference. And I understand that, Your Honor, and I agree. I mean, it's unbelievable to me. I can't defend the conduct. I wasn't involved in the litigation at that stage. I don't know the answer, except to explain that approximately 200 Rampart cases were filed against the city in an extremely short period of time, and there was a great deal of scrambling that had to go on. An entire Rampart division was set up with attorneys and so forth. It was a difficult thing to sort out in short order. But that doesn't excuse him. Maybe it was difficult for both sides. Well, Mr. Yadvin had, I think, approximately 20 cases, Judge Fee said. He is the plaintiff. He's bringing the lawsuit. He's signing off on the complaint. Certainly it's his obligation to determine whether or not he's suing the right people under the right theory. This whole situation with the habeas is just astounding to me. How does a lawyer know? I mean, here's a client who tells him X happened, right? Lawyer wasn't there. I mean, now we have this thing with the habeas petition, which is sort of a smoking gun. And, you know, Mr. Yadvin has a proclamation. Judge Fee doesn't believe it. But, you know, there it is. But let's take the normal case. Lots of facts. I mean, I think most lawyers understand that clients don't tell 100% objective truth. I mean, it ranges from being agitated and forgetting things to outside lies. And somewhere in between there is sort of seeing the world through, you know, your own self-interest and your own perspective. How does a lawyer resolve something like that? I mean, as you say, it was a confusing time. There were lots of cases going on. This is hardly a badge of honor for the city. And, I mean, the whole thing was, you know, a catastrophe. And everybody's scrambling. So what does it suggest this morning more than a screw-up here? Well, as you indicated, you can't rely on what your client tells you. That's rule number one. So what do you do? You locate the arrest report, the front page of which says it's a sheriff's arrest. In your mind, of course, somebody like Mr. Yadvin is thinking about, heck, is there a heck issue here? What happened with the criminal conviction? Here's a court of appeal opinion out of the State Court of Appeal. So let's presume he's screwed up. But 1927 really deals with a whole different class of cases. It deals with a situation where people bring lawsuits, not for legitimate reasons to get redress, but in order to make litigation oppressive and in order to basically punish the other side by forcing them to litigate. Not in any actual hope of getting a recovery, but to simply use litigation for a proper purpose, either to extract a proper settlement or simply to make life miserable for the other side. That's what I understand 1927 to be. And I don't see where Judge Fees found anything like that in this case. Well, I think Hexatious also encompasses continuing to keep the case in the system when you know the very fundamental factual premise for it is wrong. He never abandoned it. Did the judge ever go to him and say, look, check your facts, these arresting officers, or these? The meet and confer letter on the summary judgment, which is in the record. I don't have the citation in front of me, said, look, it's not. And when did that happen? The meet and confer letter that went out right before the summary judgment motion was filed. The summary judgment. What happened next? He said it wasn't LAPD that made the arrest. We're going to bring the motion. We bring the motion. We say it wasn't LAPD that made the arrest. We get all the documentation at that point. Court takes judicial notice, the court of appeal opinion, the criminal records, the habeas petition, everything. Couldn't be clearer. We didn't make the arrest. He gets the safe harbor notice. He continues to litigate the summary judgment. They file a full-out opposition. We have a serious hearing on the summary judgment. He continues to take up the city's time, the court's time. He won't drop the issue when he knows the factual premise is erroneous. That's vexatious. That's continuing an unreasonable delay. The city is paying for outside conflict counsel on these two officers, incurring tremendous expense. I understand and I agree the city should have figured this out sooner. It's true. There's no doubt about it, and I don't know what went wrong. But the fact is, it's his litigation. He put this case in the system to begin with, and he kept it there for five years when he or his partners, it's not that big of a firm, should have communicated, should have known there was no factual basis for this. We gave the safe harbor notice, albeit with or without the extra three days. At that point, doesn't somebody say, you know what? The game's up. We're not going to go through the motion of summary judgment. We're not going to waste Judge Fee's time on a case that should never have been there. We're not going to waste the city's time. That's why it falls under 1927. I think it also falls under the judge's inherent ability to sanction. Judge Fee said, you know what, before the city brought the motion, I was thinking about doing this on my own. Absolutely, he had the inherent power to issue the sanctions. He was thinking about it, but he didn't actually do it, did he? Well, I think we finally got in there, and he said, okay, we'll go with this vehicle. But he could have. The problem is that the Ninth Circuit has said you can't, after the fact, substitute a judge's inherent authority to sanction for Rule 11. That's the law. Well, then under 1927. I think it falls. Absolutely falls. Well, it's not one or the other, right? Well, I think it does. I'll tell you, I don't know what to tell you, but this was a disaster. I think Judge Kosinski said it. There were errors made all over the place in this litigation. I apologize. I wasn't involved in them, this whole thing. When I first saw this case, I was shocked by everything that was going on. Well, I'm very sympathetic to the district court judge, obviously. I'm not the only former district court judge on this panel. I know how it can be. And he's a wonderful judge. But the fact of the matter is, if you choose your vehicle, you have to live with that vehicle and you need to follow the rules of that vehicle. And if you don't, it's a potential. So I guess the other thing that Judge Bees, I think, looked at in terms of the notice question was the summer judgment motion clearly gave you notice that you were filing a lawsuit that had no merit, no basis. Yeah, but that's not the Rule 11 safe harbor notice that you have to file. I think you're way over your time. Mr. Yarger, you have two seconds. We'll round it up to a minute. Can I have an extra ten seconds, please? We'll round it up to four minutes. Okay. You can take less if you want. I just need 12 seconds. So why don't you tell us, you get the summary judgment motion. I seriously screwed up. I'm sorry. I take the blame for it. But please don't assume that I tried to vex anybody. If I tried to vex someone, it would be much better than the alleged vex in this case. This is not a vex. This is nothing. A vex is a lot more than this. But you didn't withdraw the summary judgment. You didn't. You didn't. For which, if there is a basis for sanctions, you should sanction my law firm. I didn't continue to advocate this. I didn't do it. And the reason I argue this so strongly is not because it's a huge amount of money. I think it's a lot of money. It's not huge. It's because of the collateral consequences to me. Otherwise, I wouldn't have even bothered to appeal. That's what I'm concerned about here. So you're saying the sanctions should have been against your firm and not against you personally? If there are to be sanctions under Section 1927, I don't think there can be under Rule 11. It should be against the firm because I didn't personally continue to do it. I drafted the complaint. I drafted the amended complaint. I didn't have anything to do with the case after that. Let's look at the motion for summary at the time when the motion for summary judgment was served. That was the summer of 2003. Right. At that point, at that point, I mean, the focus is clear. The wrong party. Absolutely. Absolutely. Okay. So at that point, who bore responsibility for taking the, for challenging the motion, for opposing the motion for summary judgment? The law firm and the attorneys. Okay. The law firm, the firm is composed of people. Yes. So what people in the law firm would have been responsible for deciding to oppose the summary judgment? The attorney who was handling it, Catherine Bloomfield. Okay. So now you're pointing the finger at the firm. No, I'm pointing the finger at the firm. You know, in every case in which we've ever got sanctions against anybody or against the government, it's always against the entity or the party. Whenever there are sanctions against the plaintiff's attorney, the civil rights action, they name the attorney. And that's the way it works. It should be the firm. It should be the client. Here it should be the client. But it should be the law firm. The law firm is ultimately responsible for what the lawyers do. I didn't play any part in the summary judgment. When I saw the summary judgment come in, I saw it. I recognized there was a problem. I communicated to the attorney who was handling it. There's a problem here. We need to address this. So you would have no problem if we remanded this with instructions to the district court judge to assess the sanctions against the firm? If there is a basis for sanctions, that is at, yes, that's correct. And I think I said that in the brief. I don't think I did. I said that in the brief. And I apologize for causing this mess. I signed the complaint. It's just as well that we're not arguing because I'm not. I'm sorry. I missed that point in the brief, and it's good to know that that's your position. Okay. It's the only correct position to take. I'm, you know. It's not the only correct one. And it's a possibility, but not the only possibility. I'm just speaking for myself. Okay. Thank you. Okay. If there's any further. Thank you. The case is just argued. We'll stand for a minute. We are adjourned.
judges: Canby, Kozinski, Rawlinson